Case number 22-1362 Logan Davis v. Jeremy Wallman et al. Oral argument 15 minutes per side. Mr. Patrusak for the appellants. And you've reserved your time for rebuttal? I have, your honor, four minutes. Okay, thank you. Proceed. Good afternoon, your honors. May it please the court, Nathan Patrusak on behalf of Sterling any reasonable officer could have believed that arguable reasonable suspicion existed to stop and subsequently arrest the plaintiff after he was found at 10 p.m. in front of a darkened business where he did not work in a closed commercial plaza and after he refused no less than eight times to identify himself to officer Wallman. The answer to that question is yes and there is no clearly established case law otherwise. In this case, plaintiff himself has acknowledged that it was reasonable for officer Wallman to stop him and that if he was the owner of the darkened business that plaintiff was standing in front of, he would have wanted to have officer Wallman investigate his presence. How do you distinguish family service association? If I remember correctly, your honor, family service association, I believe the plaintiffs in that case were sitting on a guardrail on a public street. That's not this case. This is not a case where the plaintiff was standing along Van Dyke Avenue where the businesses are located walking down the sidewalk or waiting at one of the many bus stops on Van Dyke Avenue. He was standing on private closed commercial property. Well, counsel, the property wasn't closed in the sense of being inside a mall. A person could easily have walked up and down that sidewalk coming or going across a plaza. Seems to me that you're right. It's private property to where one might investigate, but it's nothing unusual about there being persons there on private property. It's not like on my front lawn. Well, I think it's a little bit different because yes, there's sidewalk there, but it's not typical public sidewalk that is controlled and maintained by a municipality. This is sidewalk that is owned by the private owners of the strip mall in question. There are certainly an expectation when you're dealing with these closed commercial plazas after hours that nobody is really supposed to be there and to be loitering outside of these businesses. Loitering is the issue to be decided. Absolutely. Of course, we could go back and forth on this, but it certainly looked to me from the video that a person from a surrounding street might easily walk across there. It's not like being inside an enclosed mall. You would concede that, wouldn't you? Yeah, I would concede that. If you were inside a closed mall, you would have either overstayed your welcome after hours or you would have broken in. You'd be unusual. You'd be an employee who would be walking out. But look, as I understand this, help me if I'm missing something here. Nobody seems to be disputing the officers coming up and talking to him. The other side talks about it as a consensual encounter. There's some dispute about when it becomes a Terry stop. Would you have a statement as to when you think it becomes a Terry stop, or is that important? I don't think that's particularly important in this case. Where we draw the line as between if it's a consensual encounter, where it ends, and where the Terry stop begins, because in either a consensual stop or a Terry stop, an officer is allowed to ask a person to produce identification. He's certainly allowed to ask him, but I thought the whole legal issue here was if it's a consensual encounter, then the person can say, as Bartleby did, I'd rather not. If it has matured into a Terry stop, then you have the cases that hold at least it's not unconstitutional to require ID. Is that fair? That's absolutely fair, Your Honor. Here, you have the question of not reasonable in the ordinary person sense. You might think it's reasonable for a policeman to start questioning, but does it amount to reasonable suspicion at the beginning? Then, as the judge at least indicates, he shows his shirt and badge, question for how long, but does that dispel the suspicion? Can you focus on that? Sure, absolutely, Your Honor. I think the critical point here is what the officer knows when he comes up on the scene. He knows that the businesses in that plaza closed an hour earlier. He knows that there's no cars in that plaza, but yet he sees a person standing. Okay, but all of that is his coming up and starting this. If everybody behaved reasonably from that point forward, we wouldn't have a problem. When the officer arrives and begins discussing the matter with Mr. Davis, Mr. Davis indicates that he works at the Firehouse Subs. The problem from the officer's perspective, as he attested to, is that Mr. Davis was not standing in front of the Firehouse Subs. Does he have reasonable suspicion when he drives up and sees him standing there? I believe he does, but I don't think it makes a difference whether he does or he does not. The officer is still allowed to initiate a consensual encounter at that point and ask questions to Mr. Davis. No, I understand that. Go ahead, Judge Strange. Mr. Davis is within his to refuse to answer them or to walk away. Isn't that correct? Up until the point that it becomes that reasonable suspicion arises. That's where I think it gets, from the officer's perspective, it's important to note that Mr. Davis was not standing in front of the business where he said that he worked. The Firehouse Subs was entirely illuminated, yet Mr. Davis was not standing in front of the illuminated Firehouse Subs. He was standing in front of a darkened Dickies BBQ, which is right next to a cell phone repair shop. The officer could have said, well, why aren't you down at Firehouse? That is one possible question that could have been asked in hindsight, but it doesn't change the information that the officer possessed at the time, which is, as Mr. Davis explained, he worked there, but he was standing down here. The follow-up question to that was to identify himself, to which Mr. Davis would only give his first name, Logan, and then proceeded to refuse to provide either his last name or identification. When in the encounter was he obligated to provide the last name? I think certainly at the point at which the plaintiff has, Mr. Davis has said, I work at Firehouse Subs, but he's not standing in front of Firehouse Subs. I think it's also notable that he said he was waiting for a ride, but he was not waiting at any of the businesses, one, where he worked, or two, that were closest to the driveways for that plaza. There's a driveway at the left to the Tropical Smoothie Cafe, there's a driveway to the right towards Firehouse Subs. He was standing in the middle of both of those locations. And how much time did your defendant allow him to respond and make clear his explanation for being there? I think the conversation went on, if memory serves, for it's roughly about a minute and a half or so. I think according, you know, maybe two minutes, depending on when you combine the cell phone video and the dash cam video. I'd have to double check that. But certainly the conversation is going on, but plaintiff is not offering up any additional explanations. Well, my look at that series on the tape is that the key here is what he knew at the time of the arrest. You would agree with that, wouldn't you? I would, correct, Your Honor. Yes, and so Wallman arrested him after he had shown him his work uniform, correct? I think that there's, I think there's a question about that because Officer Wallman testified he never saw a work uniform. Mr. Davis didn't testify. Well, he didn't, he did not, he did not tell that to a fellow officer later. He said he had showed him a work uniform. He said he... You don't, my struggle is that you, with this idea that you must accept the facts as they're stated in this case by the plaintiff. And the plaintiff has said, I showed him my uniform, I showed him my badge. Your officer, in fact, admitted to another officer at the scene, at least the first officer, that he had seen the work shirt and been shown the work shirt. I do believe what he said to the fellow officer was that he was showing me his shirt. I don't believe that Officer Wallman... Isn't that irrelevant to Judge Strange's point because you have to accept that he did? And I don't think it, and for qualified immunity purposes, I don't think it matters. Because even if we were to accept the fact, as the district court did, that a jury may conclude that Officer Wallman saw that he was wearing a firehouse sub shirt, the mere showing of a firehouse sub shirt isn't, isn't identification. There's, plaintiff has not alleged that his work shirt had his full name on it. He's not alleged that he was wearing a work badge that had his full name on it. I thought he said he showed you the shirt and badge. There's no allegation that it had the plaintiff's name on either one of those items. What does the badge have? We don't know. It may just say firehouse subs on it. There's no evidence in this case that it said the plaintiff's full name. And what happens immediately after plaintiff alleges that he shows Officer Wallman the work shirt is he goes right back to refusing twice more to produce identification to Officer Wallman. So what the record shows here, Counselor, I want you to handle the facts in this record carefully. What the record shows is that he showed him his work uniform and a badge is what he alleges. And within 30 seconds of that, 30 seconds was all he had to give any further information to explain his presence there. That's the facts of this record. Why is that adequate for your officer to say he shows him the shirt? Your officer says, oh, OK, but now I want your ID. And in less than 30 seconds from that statement, he's arresting me. I see my time is up. Can I can I answer the question, please? So under the city, all of this has to do with the city's loitering ordinance and about giving an opportunity to a person to dispel the alarm that's created by their presence. Yes, certainly. What practical amount of time is necessary to give a person? Let me finish my question. To give a person a reasonable opportunity to dispel any concern and explain his presence. And I thought you've given this officer gave him less than 30 seconds. But I think that Officer Wallman did that because six times before showing Mr. Davis contends he showed the shirt. Officer Wallman had asked for his identification and was refused each time. And then after plaintiff says that he showed Officer Wallman the shirt, Officer Wallman again asks him for identification and is refused two more times. There was no circumstance under which no matter how much time was given that plaintiff exhibited any intention of identifying himself, which is a primary factor to consider under the city's loitering ordinance. And doesn't the city doesn't the loitering order or ordinance speak to the ability to explain? That right, it does. What opportunity did he have to offer an explanation in less than 30 seconds? Does he is he expected to say, wait just a minute, my father's on the way. He'll be here in just a few minutes. All the things that could have further explained were not asked by this officer. Right. Nothing else was asked other than give me your idea. There was no the plaintiff and the plaintiff did impart at the beginning of the encounter that he was waiting for his father and he worked at Firehouse Subs and Officer Wallman did ask those questions. Plaintiff was not particularly was not forthcoming on any other information. When he asked him what his last name was, he didn't say my name is Logan Davis. My address is X. He questioned him. Why? And then when questioned further, he said, well, you don't need my last name. You don't need my identification. He was afforded multiple minutes to provide this information to all. He wasn't afforded multiple. He was between the question to him and the showing of the shirt. He was tackled within 30 seconds. I think that's what the record establishes. But you will have your rebuttal time. It's Mr. Robinson's turn, please. Thank you, Your Honors. Good afternoon, Your Honors. The clock is not moving. There it is. There it is. You're having a little trouble with it, but I think it's working now. All right. Thank you, Your Honor. Clearly, your first point with regard to this being a plaintiff's not bringing this motion and the court reviewing this de novo, looking at it in a light most favorable to Mr. Davis, that being the standard, I think that the trial court was exactly right in the ruling that the trial court made. Mr. Robinson, can I ask about this loitering ordinance? Because it seems pretty broad to me. So it says loitering in a place or at a time or in a manner not usual for a law abiding individual under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. So the ordinance is broad and you argue it starts as an investigatory stop from the beginning. When he pulls up, doesn't he have arguable, reasonable suspicion at that point when he sees someone in front of a closed business standing there knowing there were 28, in his mind, 28 previous break-ins in that area? I don't think that there was ever, Your Honor, any reasonable suspicion. The only thing that the officer of Weillerman... Can I ask you about that? Because I thought you argued in your brief that when he pulled up there, it was an investigatory stop. It was a consensual stop. I agree at that point. But, Your Honor, you have to look at this in the context also of when Weillerman pulled up. Weillerman even acknowledges that Mr. Logan has a cell phone out videotaping him. So if that isn't a clue to Weillerman that Logan's not doing anything wrong, why would he be videotaping the encounter? I mean, there's no law that says the officer needs to figure out why someone's videotaping them. I mean, what the loitering ordinance says is if he refuses, among the circumstances that can be considered is a refusal to identify himself. And here, he refused to give his last name. So that factors into the officer's calculus as well. And all he has to have is arguable, reasonable suspicion, which just means, in other ways, and that is it has... The officer has to be reasonable in his assessment that there's reasonable suspicions. But not giving his last name is not the same thing as if Weillerman had articulated the fact that Mr. Logan was pacing back and forth and Mr. Logan was peering in a window. I mean, it doesn't have to, right? The law doesn't require that. He doesn't have to be right. He doesn't even have to have probable cause. He has to have a modest chance that that's what's going on. That's what reasonable suspicion is. You missed it.  No, no, no. You don't apologize. It says no person shall loiter and in a place. And then it says if he refuses to identify himself, that's enough. So why? I mean, it seems to me when he asks, it starts with reasonable suspicion. And then when he asks for his last name several times, as your friend says, it becomes probable cause. Under the loitering ordinance. Why isn't that right? What's your best argument that it's wrong? The standard for, and again, I'm speaking as a former police officer myself. The standard is an officer has to be able to articulate that a crime had been committed, was being committed, or is about to be committed. There wasn't anything that Logan did that would have given officer Wallerman such a reasonable suspicion. And that's the reason that it's not in his report. That's the reason that it's not in his deposition. When I took his deposition, there isn't anything. The only thing that he. But on the video, he says you're violating the ordinance, the loitering ordinance or whatever he says on the video. And so I'm just asking under this specific statute 3517, why isn't there a modest chance that he's violating it? And why wouldn't that be reasonable for an officer to conclude that? And again, even the provisions in the police department require the same thing. That is that this officer reasonably articulate what it is that gives him cause to believe that there is an alarm. This officer didn't do it. It was only dark at nine o'clock at night or whatever. Businesses were closed and there were no cars in the parking lot. Just those three things. There wasn't any other indicia that would distinguish Logan Davis from the Logan Davis that was simply waiting on his dad to pick him up from work versus someone else there to do something nefarious. Counsel, you stated that very well, but reasonable suspicion is frequently of something that is consistent with no criminality, but also something that might be consistent with it, right? I mean, that's why it is suspicion and not probable cause. That's why we have this whole, it may be a good idea or not, but we have this progression, correct? I agree, your honor. And the fact that he would have a reasonable explanation doesn't always dispel it, right? Of course it doesn't. But in this case, obviously it did. Now let's talk about the ordinance in the first place. Well, let me make sure I've got this right about the dispelling. Your position, am I right? Your position is that there never was reasonable suspicion at any point. Is that correct? That is absolutely correct. Secondary position is if there was reasonable suspicion when he comes up, it was dispelled by the badge and the shirt and the officer doesn't ask to see the badge up close and all the things a reasonable officer might've done, right? Correct. And then add to that again, the fact that Logan is videotaping on his cell phone. Although that one frankly doesn't move me at all, because A, teenagers videotape people so they can put them up on the web. They videotape people so that you can make fun of them, which he seems to be in an attitude to do. All right, one last question. And here I'm putting some hypotheticals against you to get to one point. Let's suppose that there's reasonable suspicion when he comes up or after some time, but before the shirt. Your position, and I'll buy this, then that dispels it. But he had already asked him for his ID and he had refused. Now the officer doesn't arrest him till later. But if there was reasonable suspicion early, then why wouldn't that violate the ordinance? I don't believe, your honor. Again, there isn't really any sort of magic to it, but obviously taking it in the totality of the circumstances. If there's nothing else, and I think we have to go by again, what was in the officer's report at the time that he made the report. Because all of this other stuff about breakings and enterings that occurred three years earlier. But what is it that's in the report then? I had focused more on the depositions and the video. What is it that's in the report that you're saying is faulty? There isn't anything indicative of any suspicion that a crime had been committed, was in the course of being committed, or was about to be committed. But you agree, Mr. Robinson, we can consider what he said. I'm sorry, Judge Walts. You agree we can consider what he said on the video? Yeah, absolutely. And again, your honor, it still goes back again, in a light most favorable to Mr. Logan. No, but what he said on the video isn't disputed. You can't dispute what he said on the video. That's Scott B. Harris. If the video clearly indicates, I'm sorry. I'm not disputing what is said on the video. Okay, so then back to Judge Walts. I'm sorry to interrupt you, Mr. Robinson. It's hard with this Zoom, but I apologize. Back to Judge Boggs' question, the resisting an officer says you violate it when you willfully fail to refuse or fail or refuse to provide identification to an officer who is investigating possible unlawful conduct. So why didn't he violate that ordinance if you accept that he, Judge Boggs, hypothetical that he was investigating possible unlawful conduct? Well, I don't go so far to say possible wrongful conduct. The fact that the officer stopped in the first place, he's not saying that he saw a crime being committed. He just stopped to make an observation. He can't have waited the longer. Mr. Robinson, I'm sorry, but go back to what he said on the video. So your client says, I can't remember the exact, but he says, you can't do that. What gives you the right to do that? And he says, I'm investigating you for loitering. That's what gives me the obligation to do it. And then your client says something like, show me the paper or something like that. And he says, no, give me your name. And I might be butchering this, but it's something of that sort. So at that point, he's made clear he's investigating possible unlawful conduct. Accepting that is true. My point, and this is Judge Boggs' hypo. He's asking it as a hypo, but go back. Accept that it's possible unlawful conduct. Do you agree if it is, if it is, that he willfully, by failing to give his identification, he's violating the resisting law? I don't agree with that. And do you lose if we read it differently? Obviously, you know, that raises a grave concern for me. But we still have to be able to appreciate, again, the distinction between a guy that's waiting out of the rain to legitimately be picked up by his dad, and another guy who's actually there to do wrong. If you turn this situation around, I own a building as a lawyer. I could be in a nine o'clock leaving my office, sitting on the stairs of my office, and a waterman comes by, and then he can do the exact same thing to me. And I'm not doing anything other than standing on my porch. So that's the danger. So just because a waterman believes that, you know, he can't do this on a hunch, the law says it. He has to be able to articulate some slight indicia. The law doesn't put that big of a burden on a police officer in order to justify an investigatory stop and a detention. But this officer did not articulate anything other than the fact that it was dark outside, there were no cars in the parking lot, and the businesses were closed. Had he put in there that he saw and surveilled Mr. Logan, you know, for another 30 seconds, and he saw him pacing back and forth, or he put in his report something to the effect that I looked in his direction and Mr. Logan... But there's no case that says he has to wait a certain amount of time, is there, Mr. Robinson? There isn't. I'm throwing that out. There isn't a case that says that. And what is your understanding of the statutory language regarding refusing to identify himself or manifestly endeavors to conceal himself? Is your position based on the discussion that was had right before the arrest? I'm looking at the cell phone stamps when Wallman says that you're standing in front of a closed business and loitering, and Davis's response is, how can he be loitering if he just got off work and is waiting on his dad? Help me understand your position of what it was about the exchange, either link or statements made, that you think shows he was not given a reasonable opportunity to identify himself. Well, again, you know, it seems to be that there is certain duty and responsibility on the part of the officer. Just like you just indicated, it was less than 30 seconds or so that Wallerman started in the I'm going to arrest you mode versus any sort of, you know, reasonable effort to get to allow further dispel by Mr. Logan. He just jumped in and that was it and said you're under arrest after. And again, I think that Mr. Logan, the only thing that he didn't do was give his last name, did everything else. Okay, I think your time is up. Counselor, rebuttal. Well, I think the question. I have a question to begin with. Sure, the timer. I'm sorry, the timer is not started, by the way. Well, they'll start it and we'll give you. Yes, we'll give you. I'm looking at the beginning of your brief and there's a picture of somebody standing under an awning that appears to be talking about this case, but it's not this defendant. Can you explain to me what this picture is about? Absolutely, Your Honor. Back in, it was a few years prior to this, there was a series of serial break-ins in Sterling Heights, commercial break-ins. That is a picture of the subject, the suspect in that case. He was standing under the awning at the Tropical Smoothie Cafe, which is right. That was three years ago, right? It was 2016. I believe you're correct. He had been found, correct? He had been arrested, correct? 100%, yep. And he had been convicted, correct? I don't know the disposition of it, but he had been arrested. I can say that much. But the reason that that's included is because one of the things that factors into the totality of the circumstances is an officer's knowledge at the time. And Officer Walleman was aware that a few years earlier, somebody standing at about 10 p.m. wearing a work jacket stood under an awning in that very same plaza and tried to break into a business. And while that's- So help me understand. So three years ago, you've got this other crime. And is it your position that because someone is also standing under an awning in the evening, that creates reasonable suspicion? I think it's a factor to be considered among all of the other factors to be considered because it's within the officer's knowledge and his experience. It's the same as there's no cars in the parking lot. It's 10 p.m. All the businesses are closed. Officer Walleman knows that nobody is supposed to be in this plaza at that time and that previously, a few years prior, someone was and tried to break into one of the businesses. It's a factor that- Well, help me then understand your position on- If your argument is that you had reasonable suspicion, then we come to the question of whether it was dispelled. You cite United States v. Young to support the idea that Davis's explanation was insufficient to dispel it. And it's true that in Young, we upheld an officer's decision to run a warrant during- In that situation, it was a valid Terry stop. But in Young, here was our decision that the relevant question was whether the officer had a right to run a warrant check unrelated to the suspected crime. How does that make our law establish that there was a dispelled reasonable suspicion here? I don't see how that case has anything to do with what your position is. Well, I think it's just- It's more to be an example of the fact that things that happen midstream don't- If there is reasonable suspicion, things that happen midstream don't necessarily always dispel the reasonable suspicion that already existed. There's no case that says showing a shirt or a badge somehow serves as proper identification for a person. A firehouse sub shirt doesn't tell you anyone's last name, doesn't tell you where they live, it doesn't enable you to look them up in lien to determine if they have any active warrants or anything like that. It doesn't identify him. And so while he may have went to go show that shirt, it didn't have any effect in terms of cutting off the reasonable suspicion that already existed. Counsel, if I may, Judge Strang, the opposite or the other side of what I asked your colleague is, is it effectively your position that he could have arrested him before he ever talked about the work shirt because there was reasonable suspicion, he asked for the ID, he didn't get the ID, he could have arrested him right then? I believe that's correct, Your Honor. He asked him six times before any attempt to show the shirt for a last name and for identification, and he was refused. If I gave you that, but then he didn't arrest him at that point. Usually, I think the quote is, probable cause is what exists at the time of the arrest. Because the city's law ordering ordinance requires an officer to give an individual an opportunity to dispel the alarm created by their presence. So he was giving up Logan Davis the opportunity to do that. If we take that on your side, then the fact that he didn't, for example, say, oh, can I look at the badge? Because the badge might well have had his name. As Judge, I counted, I think, seven seconds from the zipping or unzipping of the hoodie until he starts grabbing his hands. That doesn't look like giving him much of a chance once you bring the shirt and the badge into play, which the district judge has said you do. And we have to buy that, don't we, under Johnson v. Jones? It's not blatantly contradicted by the video. I looked at the video, and you can see what looks like some movement there. There's movement. You cannot see him wearing a firehose. I agree. You can't see the badge. But you're a physician counselor. You are bound by what the district court found. You do not get to put a new gloss on the determination of the district court. No, I- If you do not accept it, we don't have jurisdiction. I'm accepting the fact that the district court found that a reasonable jury could conclude that Officer Wallman saw the shirt and badge. The point that I'm making about the shirt and badge is there is no evidence in this case whatsoever that either the shirt or badge had Mr. Davis's full name on it. That I'll accept, but neither did the officer in giving him a chance to explain. Like any aversion to that, he goes straight- But the officer, right after the alleged showing of the shirt, the officer says, okay, now let me see your ID. And two more times, he refuses. If you can say, in terms of alarm bells and the loudness of alarm bells for loitering, if the showing of the shirt decreased the value of the alarm bells, the subsequent two refusals to provide identification simply caused the volume of those alarm bells for loitering to go back up, creating probable cause for Mr. Davis's own arrest. That's what he did in this case by refusing eight times at least to identify. Again, that's to a reasonable juror, and you may have success if you get to the reasonable juror, depending on what we do. But it can't be that doing something you have a right to do creates more reasonable suspicion, is there? I don't think he had a right to refuse to identify himself in that instance. There is no case law- That's a legal question we have to decide on. There's no case that says that if you are confronted by somebody who six times previously has refused to identify themselves in this situation, time, place, manner, where it appears that they are loitering, that the showing of a shirt you can buy a firehouse sub shirt anywhere. You can be wearing it. It doesn't mean you work there. It doesn't mean that you're not breaking into a place even though you work there. It doesn't mean you're not engaged in criminal conduct. I think your time's up, counsel. We appreciate the arguments. The case will be taken under advisement and an opinion rendered in due course.